LOUIS H. ABRAMSON, JULIUS ABORN AND MORRIS EHRLICH, DOING BUSINESS AS THE FIELDSTONE TOOL AND MACHINE CO., PETITIONER, *v.* R. F. C. PRICE ADJUSTMENT BOARD, RESPONDENT.

Docket No. 197–R. Promulgated December 15, 1948.

*Morris Ehrlich, Esq.*, for the petitioner.
*Frederick N. Curley, Esq.*, for the respondent.

OPINION.

HILL, *Judge*: Petitioner brings this proceeding to challenge the unilateral determination made by respondent that petitioner received excessive profits in the amount of $25,000 from certain contracts and subcontracts in its fiscal year ended December 31, 1942. Petitioner

stipulates that such determination is correct only if we should find that (a) the Renegotiation Act of 1942 is constitutional in its application to petitioner, and (b) that renegotiation proceedings respecting petitioner's fiscal year ended December 31, 1942, were commenced within the time prescribed by section 403 (c) (6) of the Renegotiation Act of 1942.

The first objection to the constitutional validity of the Renegotiation Act of 1942 raised by petitioner is that it must fail as an unlawful delegation of legislative power to administrative officials. This question has recently been decided by the Supreme Court in *Lichter* v. *United States*, 334 U. S. 742. The Court there held that the statute constituted a lawful delegation of administrative authority. Further discussion of this point on our part is unnecessary.

Secondly, petitioner argues that the act fails to provide expressly for adequate notice to contractors of the commencement of renegotiation proceedings. Petitioner, in its brief, argues this is a violation of the due process clause of the Fourteenth Amendment. Since the Renegotiation Act is a Federal statute, this question should have been raised under the due process clause of the Fifth Amendment, and we shall consider it in the light of the latter amendment.

The Supreme Court in *Lichter* v. *United States, supra,* also disposed of this argument.

* * * we hold that the statute did afford procedural due process * * *. This initial proceeding [renegotiation by one of the respective Secretaries or by the Board] was not required to be a formal proceeding producing a record for review by some other authority. In lieu of such a procedure for review, the Second Renegotiation Act provided an adequate opportunity for a redetermination of the excessive profits, if any, *de novo* by the Tax Court. "The demands of due process do not require a hearing, at the initial stage or at any particular point or at more than one point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective." *Opp Cotton Mills* v. *Administrator,* 312 U. S. 126, 152–153.

The Supreme Court had in mind section 701 (b) of the Revenue Act of 1943, known as the Second Renegotiation Act, which amended the Renegotiation Act of 1942, including the addition of section 403 (e) (2). That section provided in part that any contractor aggrieved by a determination of a Secretary made prior to the date of the enactment of the Revenue Act of 1943 with respect to a fiscal year ended before July 1, 1943, might, within 90 days after the date of the enactment of the Revenue Act of 1943, file a petition with the Tax Court for a redetermination thereof. Thus the Supreme Court, in determining that the Renegotiation Act granted procedural due process, considered the provisions of the Renegotiation Act of 1942 and its subsequent amendment by section 701 (b) of the Revenue Act of 1943 to be in *pari materia* and construed them as one statute. The court, in *Spaulding* v. *Douglas Aircraft Co.,* 154 Fed. (2d) 419, found

the Renegotiation Act of 1942 valid under the due process clause by similar reasoning. Such a construction of the Renegotiation Act of 1942 is justified, for section 701 (b) of the Revenue Act of 1943 provided due process for those contractors whose excessive profits had been previously determined by a Secretary under the Renegotiation Act of 1942 and thus retroactively cured any possible defect of the latter act in this regard. The very fact that this case is before us today is proof that petitioner's right to due process in the determination of its excessive profits under the Renegotiation Act of 1942 received statutory protection. We find no merit in petitioner's contention.

We shall now consider the question whether renegotiation proceedings in the instant case were commenced within the time required by the Renegotiation Act of 1942. Section 403 (c) (6) of this act states in part:

* * * No renegotiation of the contract price pursuant to any provision therefor, or otherwise, shall be commenced by the Secretary more than one year after the close of the fiscal year of the contractor or subcontractor within which completion or termination of the contract or subcontract, as determined by the Secretary, occurs.

The contracts and subcontracts which were the subject of renegotiation in this case were completed within petitioner's fiscal year 1942, which closed on December 31, 1942. We must decide whether renegotiation proceedings were commenced within one year from this date.

To answer this, we first consider what constitutes the commencement of renegotiation proceedings within the meaning of the statute. This Court, in *Spray Cotton Mills* v. *Secretary of War*, 9 T. C. 824, considered this matter and held that the mailing of a letter to a contractor by a Secretary, which letter requested information upon which the contractor's excessive profits could be determined, constituted a commencement under section 403 (c) (6). The Court specifically excluded receipt of such notice by the contractor as a necessary part of commencing proceedings by stating, p. 831:

* * * receipt of the letter by the petitioner is not essential to commencement. The receipt of notice by the petitioner is a thing entirely apart from the commencement of the proceeding by the Secretary. * * *

With this interpretation of the statutory language in mind, we examine respondent's contention that a registered letter with enclosures which was mailed by the Price Adjustment Board of the War Department to petitioner on December 20, 1943, at its address at 5845 Broadway, New York, New York, commenced renegotiation proceedings herein by the Secretary of War.

The evidence here is strong enough to establish that the letter with enclosures was so mailed by registered mail and that it not only

specifically stated that it was the commencement of renegotiation proceedings but also requested financial and accounting data from petitioner for use in determining excessive profits and set a date for the initial conference, which was within a year after December 31, 1942.

The official custodian of all records of the War Department relative to the assignment of renegotiation cases testified that such records show that the letter in question was so mailed to petitioner and that the registered number of such letter was 1764589.

The chief of the Army Mail Communication Section of the War Department, who had custody of the official records showing the registry of all articles which orginated in the War Department, testified these files disclose that his section gave a receipt to the Adjutant General's Message Center No. 1 for 50 pieces of registered mail on December 20, 1943, at 9 : 21 p. m.; that included in these 50 items was a registered letter, No. 1764589, addressed to petitioner. The receipt itself verifying this testimony was introduced in evidence. The records further showed that this letter was placed in a locked pouch and was signed for by an authorized messenger of the city post office in Washington, D. C., at 10 : 20 p. m. that evening. There is no evidence in the record to negative these facts. In fact, petitioner does not deny that the letter in question was so mailed.

The evidence is that the mailing procedure followed, as above indicated, has been the office practice and custom in respect to all letters commencing renegotiation proceedings by the Secretary of War. Evidence of compliance with such practice has been held sufficient proof of mailing.

* * * Such proof need not consist of direct and positive testimony to the ultimate fact of mailing, and proof of the existence of an office practice or custom in the mailing of letters, together with proof that the custom was followed in the particular instance, may constitute sufficient evidence of mailing. * * * [31 C. J. S., sec. 136, pp. 781, 782.]

Evidence of the delivery of this letter further buttresses the evidence directly connected with the mailing of the communication. A delivery receipt retained by the New York City post office was placed in evidence showing delivery of registered letter No. 1764589 to petitioner at 5845 Broadway, on December 22, 1943. The signature of Vilton appears on the line for the signature of the addressee. Also introduced in evidence was a return receipt for registered letter No. 1764589 addressed to the Price Adjustment Board and bearing the name of Kings Bridge Station of the New York City post office as the delivering post office. It states the registered article was received on December 22, 1943, and it is also signed by Vilton as the addressee. Petitioner contends that it did not receive this letter, but it introduced no evidence to support the contention. In the absence of such proof, we

hold the letter was delivered to an authorized agent of petitioner on December 22, 1943. *Farmers Mut. Ins. Assn.* v. *Tankersley*, 69 So. 410, 413; *McCaskey Register Co.* v. *Lumpkin*, 197 So. 640, 641.

As a result of such convincing evidence, we found as a fact that the Price Adjustment Board mailed this communication to petiticner on December 20, 1943, by registered mail. Thus, all conditions necessary for the commencement of renegotiation proceedings announced in *Spray Cotton Mills* v. *Secretary of War*, *supra*, were met on this date.

Such proof of mailing also raises a presumption that the letter was received by petitioner. *Leahy* v. *United States*, 15 Fed. (2d) 949; *Profit* v. *Seabord Mut. Casualty Co.*, 28 Fed. Supp. 202, 205; *Columbian Nat. Life Ins. Co.* v. *Rodgers*, 93 Fed. (2d) 740. While, according to the doctrine we announced in *Spray Cotton Mills* v. *Secretary of War*, *supra*, receipt of notice by a contractor is not a necessary part of the commencement of renegotiation proceedings, yet the existence of such fact further serves to defeat petitioner's contention that renegotiation proceedings were not timely commenced.

We conclude that there was a commencement of renegotiation proceedings by a duly authorized agent of the Secretary of War on December 20, 1943, within one year after December 31, 1942, the close of the fiscal year within which the contracts and subcontracts subject to renegotiation were completed. Therefore the time requirement of section 403 (c) (6) of the Renegotiation Act of 1942 is satisfied.

We have determined all issues raised in this proceeding in favor of respondent. Therefore, in accordance with the stipulation of the parties, we hold that petitioner's profits for the fiscal year 1942 were excessive in the amount of $25,000.

An order will be entered in accordance herewith.